# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TASHA GRIFFIN, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 4:22-CV-00970 |
| v. | § | Judge Mazzant |
| | § | |
| O'BRIEN, WEXLER, AND | § | |
| ASSOCIATES, LLC d/b/a "OWA | § | |
| PROCESSING"; d/b/a "OLIVER, | § | |
| WRIGHT & ASSOCIATES"; d/b/a | § | |
| "NATIONAL ASSSET RECOVERY | § | |
| ASSOCIATES"; CHARLES JONSON, | § | |
| individually, and NATIONAL DEBT | § | |
| HOLDINGS LLC, | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff Tasha Griffin's Motion for Default Judgment (Dkt. #12).  Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part**.

## BACKGROUND

On November 15, 2022, Plaintiff Tasha Griffin ("Griffin") filed suit against Defendants O'Brien, Wexler, and Associates, LLC ("OWA") (d/b/a "OWA Processing," "Oliver, Wright & Associates," and "National Asset Recovery Associates") and Charles Johnson ("Johnson"), (collectively "Defendants").[1]  Griffin alleges that, through their improper attempts to collect on a consumer debt allegedly owed by Griffin, both Defendants have violated the federal Fair Debt

---

[1] Since filing this case, Griffin has voluntarily dismissed her claims against Defendant National Debt Holdings LLC ("NDH") under Federal Rule of Civil Procedure 41(a), and, as a result, NDH is not subject to this motion for default judgment (Dkt. #11 at p. 1).

Collection Practices Act ("FDCPA") and the Texas Debt Collection Act ("TDCA") (Dkt. #1 ¶¶ 63–96).[2]

At an unknown point in the past, Griffin defaulted on a personal loan issued by a consumer lending company (the "Account") (Dkt. #1 ¶¶ 23–24).  NDH acquired Griffin's Account for collection and transferred it to OWA, a New York-based collection company owned by Johnson (Dkt. #1 ¶¶ 26–27).  Johnson, as the owner of OWA, managed and oversaw OWA's collection operations and created its policies and procedures (Dkt. #1 ¶ 45; Dkt. #12, Exhibit 3 at pp. 3–4).  OWA conducted its collections without a surety bond (Dkt. #1 ¶ 49).  OWA operated under the name "Oliver Wright and Associates" to create the impression that it is a law firm (Dkt. #1 ¶ 32; Dkt. #12, Exhibit 3 at p. 5).

OWA contacted Griffin over the phone (Dkt. #1 ¶ 31).  During its interactions with Griffin, OWA never informed Griffin that OWA was a debt collector, that it was attempting to collect a debt, or that any information it obtained would be used for the purpose of debt collection during any of their interactions (Dkt. #12, Exhibit 3 at p. 6).  Rather, OWA personnel told Griffin that OWA would pursue her in court and obtain a judgment against her (Dkt. #12, Exhibit 3 at p. 5). At the time that OWA made these statements, the statute of limitations on the Account had expired, and OWA had no intent to file suit against Griffin (Dkt. #1 ¶¶ 35–38).  Griffin alleges that OWA's collection practices caused her to suffer fear, anxiety, stress, sleeplessness, mental anguish, mild depression, and distraction from normal life (Dkt. #1 ¶ 54).

As noted above, Griffin initiated this case on November 15, 2022 (Dkt. #1).  Griffin personally served Defendants with a summons and a copy of the complaint at their place of

---

[2] In her complaint, Griffin also asserts causes of action for violation of privacy against Defendants OWA and Johnson (Dkt. #1 ¶¶ 72–73; 95–96).  Griffin has since abandoned these claims and she does not seek default judgment on them here (Dkt. #12, Exhibit 3 at p. 20).

business in Lockport, New York on January 12, 2023 (Dkt. #5; Dkt. #6).  Defendants' answers were due by February 2, 2023 (Dkt. #5; Dkt. #6).  To date, Defendants have not filed an answer or otherwise responded to Griffin's complaint (Dkt. #12).  As a result, Griffin submitted a request for an entry of default to the Clerk of the Court on February 10, 2023 (Dkt. #8).[3]  The Clerk of the Court entered a default against Defendants on February 17, 2023 (Dkt. #10).

On the same day, Griffin moved for a default judgment (Dkt. #12).  Griffin asks the Court to enter an order finding OWA liable under the FDCPA and TDCA and awarding $1,100.00 in statutory damages (Dkt. #12 ¶¶ 5–7).  Griffin seeks the same against Johnson and also asks the Court to hold both Defendants jointly and severally liable for her attorneys' fees and costs in the amount of $11,366.40 with post-judgment interest (Dkt. #12 ¶¶ 9–14).  In addition, Griffin asks that the Court grant an injunction against Defendants enjoining them from collecting or attempting to collect in Texas (Dkt. #12 ¶ 8).

**LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment.  FED. R. CIV. P. 55.  The Fifth Circuit requires a three-step process for securing a default judgment.  *New York Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  First, a default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Rule 12 of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 55(a); *New York Life Ins.*, 84 F.3d at 141.  Next, an entry of default may be entered by the Clerk when the default is established

---

[3] Griffin's request for an entry of default judgment was not accompanied by an affidavit, which is typically included under Federal Rule of Civil Procedure 55(a) (Dkt. #8).  That said, in the body of her request, Griffin's counsel certified that Defendants failed to answer Griffin's complaint and that neither Defendant is a minor, incompetent, or an active duty of the military (Dkt. #8 at pp. 1–2).  Griffin also filed executed returns of service on the docket (Dkt. #5; Dkt. #6).  The Court is therefore satisfied that Griffin has complied with the requirements of Rule 55(a) here.  *See* FED. R. CIV. P. 55(a); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (4th ed. 2020).

by affidavit or otherwise.  FED. R. CIV. P. 55(a).  After the Clerk enters a default, "the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).  Third, a plaintiff may then apply to the Clerk or the Court for a default judgment.  FED. R. CIV. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

Entry of a default judgment is within the Court's discretion.  *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).  Although entries of default judgment are generally disfavored in the law, entry of a default judgment is not an abuse of discretion when a defendant fails to answer a complaint. *Lacey v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000); *Bonanza Int'l, Inc. v. Corceller*, 480 F.2d 613, 614 (5th Cir. 1973), *cert. denied*, 414 U.S. 1073 (1973).

## ANALYSIS

The Court finds that Griffin is entitled to a default judgment against Defendants.  In determining whether a default judgment should be entered against a defendant, courts in the Fifth Circuit have developed a three-part analysis, which assesses: (1) whether the entry of default is procedurally warranted, (2) the substantive merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings for the judgment, and (3) what form of relief, if any, a plaintiff should receive.  *Graham v. Coconut LLC*, No. 4:16-CV-00606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citations omitted).  Applying this framework here, the Court concludes that a default judgment is procedurally warranted and supported by a sufficient factual basis in Griffin's complaint.

## I.    Default Judgment is Procedurally Warranted

The Court must first determine whether default judgment is procedurally warranted, that is, whether default judgment is appropriate under the circumstances. *Lindsey*, 161 F.3d at 893.  In

4

making this determination, the Court considers six factors: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. All six of the *Lindsey* factors weigh in favor of a default judgment for Griffin.

### A.      No Issues of Material Fact are Present

Defendants have failed to answer or otherwise respond to Griffin's complaint. Consequently, Defendants admit Griffin's well-pleaded allegations of fact, except those related to damages. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that the "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). And so, there are no issues of material fact.

### B.      Default Judgment Would Not be Harsh or Result in Substantial Prejudice to Defendants

Defendants failed to respond to the claims asserted here. Defendants have not appeared, filed a pleading, or communicated with Griffin's counsel, and there is no indication that they intend to do so (Dkt. #12, Exhibit 3). Taking the well-pleaded facts as true, Griffin has asserted valid causes of action. Griffin properly requested entry of judgment in her favor (Dkt. #1). Further, Griffin's Motion for Default Judgment has been on file for nearly four months with no response from Defendants (Dkt. #12). Although Griffin did not personally serve her Motion for Default Judgment on Defendant, "[n]o service is required on a party who is in default for failing to appear" unless the pleading asserts a new claim for relief. FED. R. CIV. P. 5(a)(2). Defendants received ample notice of the suit when Griffin personally served Defendants with a summons and the Complaint on January 12, 2023 (Dkt. #5; Dkt. #6). A default judgment is not unusually harsh in

this case as Defendants have had ample opportunity to respond after receiving notice of this action and have failed to do so.  *See Cunningham v. Crosby Billing Servs., Co.*, No. 4:18-CV-00043, 2018 WL 6424792, at *3 (E.D. Tex. Oct. 14, 2018).  Further, Defendants' failure to respond prejudices Griffin because it halts the adversarial process.  *Id*.  Based on this procedural history, default judgment would not be a harsh result or substantially prejudice Defendants.

###    C.    The Grounds for Default Judgment are Clearly Established

Griffin successfully effected service of process on Defendants on January 12, 2023 (Dkt. #5; Dkt. #6).  Defendants failed to answer or respond to the complaint (Dkt. #12, Exhibit 3 at p. 7).  The grounds for default judgment are thus clearly established because Defendants have not participated in any part of the adversarial process—they have failed to respond to the summons, the complaint, the entry of default, or Griffin's Motion for Default Judgment. *See, e.g., J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding that default judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

###    D.    Defendants' Default is Not Due to Excusable Neglect or Good Faith Mistake and the Court is Unaware of Any Reason to Set Aside the Default

Again, Griffin properly served Defendants (Dkt. #5; Dkt. #6).  Defendants failed to respond, let alone offer evidence that its unresponsiveness is due to a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893.  Further, nothing in the record indicates that Griffin has contributed to the delay of this action or otherwise given the Court any reason to set aside default judgment. *See id*.

## II.     There is a Sufficient Basis for Default Judgment in the Pleadings

After establishing that default is procedurally warranted, the Court must assess the substantive merits of Griffin's claims and determine whether there is a sufficient basis in the pleadings for the judgment.  *Nishimatsu*, 515 F.2d at 1206.  Although Defendants are deemed to have admitted the allegations set forth in Griffin's complaint due to the entry of default, the Court must review the pleadings to determine whether the complaint presents a sufficient basis for relief. *Lindsey*, 161 F.3d at 893.

In making this assessment, courts in the Fifth Circuit "draw meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint."  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu*, 515 F.2d at 1206). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).  Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes and citations omitted)).  Upon review of Griffin's complaint and Motion for Default Judgment, the Court finds that Griffin has pleaded a sufficient basis as to each of her claims under the FDCPA and the TDCA.

### A.     Griffin's Fair Debt Collection Practices Act Claim

Griffin alleges that Defendants violated the FDCPA by failing to comply with the requirements of 15 U.S.C. § 1692 (Dkt. #12, Exhibit 3 at p. 10).  The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and

7

to promote consistent State action to protect consumers against debt collection abuses." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234 (5th Cir. 1997) (quoting 15 U.S.C. § 1692(e)).  Accordingly, the FDCPA prohibits "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Further, "[s]ection 1692e furnishes a nonexclusive list of prohibited practices." *Daughtry v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016).  For example, under § 1692e(2)(A), a debt collector may not falsely represent "the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A).

To plead a viable FDCPA claim, Griffin must allege that: (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See, e.g.*, *Caldera v. RMA Recovery Grp. LLC*, No. 5:18-CV-00807, 2020 WL 3883257, at *4 (W.D. Tex. July 9, 2020).  The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id*. § 1692a(5).  Further, under the FDCPA, "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id*. § 1692a(6).

1.      **OWA's Liability Under the Fair Debt Collection Practices Act**

Griffin has adequately pleaded an FDCPA claim against OWA.  She alleges that she is a consumer, and that OWA is a debt collector FDCPA (Dkt. #1 ¶¶ 6–19).  Griffin also alleges that OWA has engaged in a host of acts prohibited by the FDCPA.

More specifically, Griffin alleges that OWA violated the FDCPA in the following ways:

- Making false statements to Griffin that implied or directly stated that OWA is a law firm (Dkt. #1 ¶ 32).

- Indicating to Griffin that she would be sued if she did not immediately repay the Account when, in reality, OWA did not intend to sue Griffin as the statute of limitations on the Account had already run (Dkt. #1 ¶¶ 33–35).

- Failing to inform Griffin that OWA is a debt collector, that it was attempting to collect a debt, and that any information obtained would be used for the purpose of debt collection (Dkt. #1 ¶ 40).

Taking these undisputed allegations as true, Griffin has alleged that OWA violated § 1692e of the FDCPA.  *See, e.g.*, *United States v. Commer. Recovery Sys.*, 179 F. Supp. 3d 728, 735–36 (E.D. Tex. 2016) (finding violations of the FDCPA where a debt collector threatened plaintiff with legal action despite never filing a civil lawsuit against plaintiff or intending to sue plaintiff); *see also* 15 U.S.C. § 1692e(11) ("[T]he failure to disclose . . . in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . . .").

2.      **Johnson's Liability Under the Fair Debt Collection Practices Act**

Likewise, Griffin has pleaded an adequate FDCPA claim against Johnson.  Grifin alleges that Johnson is a "debt collector" under the FDCPA as his principal purpose is collecting debts through the mail and over the phone (Dkt. #1 ¶ 20).  That said, courts are split on the issue of whether, and under what circumstances, a shareholder or officer of a debt collection company can be held individually liable under the FDCPA.  The majority of courts that have considered this

issue have held that individuals can be held liable as debt collectors under the FDCPA without piercing the corporate veil. *See, e.g.*, *Kistner v. L. Offs. of Michael P. Margelefsky, L.L.C.*, 518 F.3d 433, 437–38 (6th Cir. 2008); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1079 (E.D. Cal. 2008) (noting that "corporate structure does not insulate shareholders, officers, or directors from personal liability under the FDCPA"); *Brumbelow v. L. Offs. of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 621–22 (D. Utah 2005). On the other hand, a minority of courts have held that, irrespective of the individual's involvement with a corporation's debt collecting activities, a shareholder or officer of a debt collection company cannot be personally liable unless the plaintiff pierces the corporate veil. *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (concluding that the corporate form protects shareholders from personal liability and that, in naming them, plaintiffs "should have been sanctioned for what amounts to malicious prosecution"); *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000).

The Fifth Circuit has not weighed in on this issue, and district courts within this circuit can be found on both sides of the split. *Compare Noonkester v. Elite Debt Brokers, LLC*, No. 4:21-CV-00700, 2022 WL 3448637, at *5 (N.D. Tex. Aug. 17, 2022) (holding that a finding of individual liability under the FDCPA "does not require piercing the corporate veil"), *with Ernst v. Jesse L. Riddle, P.C.*, 964 F. Supp. 213, 216 (M.D. La. 1997) (noting that the FDCPA lacks any language suggesting that "Congress intended the act to supplant state corporate law which generally limits the liability of a corporation's shareholders, officers, and directors"). In the absence of binding authority on this issue, the Court will follow the majority approach and hold that, under the plain language of the FDCPA, Johnson can be considered a "debt collector" and thus held personally liable without piercing the corporate veil. *See Kistner*, 518 F.3d at 437.

After all, the FDCPA defines "debt collector" as "any *person* . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, *directly* or *indirectly*, debts owed or due . . . ."  15 U.S.C. § 1692a(6) (emphasis added).  The use of "any person" in the statutory definition of "debt collector" indicates that "it is highly unlikely that Congress wished to restrict liability to the often small corporate vehicle used for collection, and that the statutory language clearly brings all those personally involved within the ambit of 'debt collector.'"  *Robinson v. Managed Accts. Receivables Corp.*, 654 F. Supp. 2d 1051, 1059 (C.D. Cal. 2009) (cleaned up); *Schwarm*, 552 F. Supp. 2d at 1071 (noting that individual liability is "consistent with the FDCPA's broad language.").  Based on this language, the Court is satisfied that an individual can be held liable as a debt collector under the FDCPA without piercing the corporate veil if they are involved—directly or indirectly—in debt collection activities. *Kistner*, 518 F.3d at 437.[4]

Griffin alleges that Johnson is both directly and indirectly involved in OWA's debt collection activities in the following ways:

- Creating the collection policies and procedures used by OWA, and its respective employees and agents, in connection with their common efforts to collect consumer debts (Dkt. #1 ¶ 45).

- Managing and controlling the daily collection operations of OWA (Dkt. #1 ¶ 45).

- Supervising the application of the collection policies and procedures used by the OWA and its employees and agents (Dkt. #1 ¶ 45).

- Drafting, creating, approving, and ratifying the tactics and scripts used by OWA and its employees and agents to collect debts from consumers, including the tactics

---

[4] This reading of the FDCPA is further supported by the Federal Trade Commission's staff commentary on the FDCPA, which states that the phrase "debt collector" includes "[e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owned another." *See* Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50102 (Dec. 13, 1988); *Bray v. Cadle Co.*, No. 4:09-CV-00663, 2010 WL 4053794, at *7 (S.D. Tex. Oct. 14, 2010) (citing the staff commentary in support of the conclusion that the FDCPA allows for individual liability).

and scripts that were used to attempt to collect an alleged debt from Griffin (Dkt. #1 ¶ 45).

- Ratifying the unlawful debt collection practices and procedures used by the OWA and its employees and agents in connection with their common efforts to collect consumer debts (Dkt. #1 ¶ 45).

- Having knowledge of, approving, participating in, ratifying, and benefiting financially from the unlawful debt collection practices used by OWA and its employees and agents in attempts to collect an alleged debt from Griffin (Dkt. #1 ¶ 45).

Based on these undisputed allegations, Griffin has alleged that Johnson "regularly collect[ed] or attempt[ed] to collect, directly or indirectly" debts allegedly owed by Griffin; thereby satisfying the definition of "debt collector" and exposing Johnson to individual liability under the FDCPA.  *See* 15 U.S.C. § 1692a(6); *Kistner*, 518 F.3d at 438 (holding that individual employee was "debt collector" based on his specific involvement in debt collection activities); *Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1336–37 (D. Utah 1997) (same).  Accordingly, Griffin has successfully stated a claim against both OWA and Johnson under the FDCPA.

### B.     Griffin's Texas Debt Collection Act Claim

Griffin further alleges that both OWA and Johnson violated the Texas Debt Collection Act by conducting debt collection activities without a surety bond and by making fraudulent, deceptive, or misleading representations while attempting to collect on the Account (Dkt. #1 ¶¶ 66–71; 89–94).  To successfully state a TDCA claim, Griffin must allege that: (1) the debt at issue is a consumer debt; (2) Defendants were debt collectors within the meaning of the Act; (3) Defendants committed a wrongful act in violation of the Act; (4) the wrongful act was committed against Griffin; and (5) the wrongful act injured her. *See, e.g.*, *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 743 (E.D. Tex. 2013).

Under the TDCA, "consumer" is defined as "an individual who has a consumer debt." TEX. FIN. CODE ANN. § 392.001(1). "Consumer debt" is defined as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction" *Id*. § 392.001(2). "Debt collector" is defined as "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." *Id*. § 392.001(6). Finally, "third-party debt collector" means:

> [A] debt collector, as defined by 15 U.S.C. § 1692a(6), but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who:
>
> > (A) are regularly engaged to solicit debts for collection; or
> >
> > (B) regularly make contact with debtors for the purpose of collection or adjustment of debts.

*Id*. § 392.001(7). As discussed above, Griffin has pleaded that she is a consumer, that both Defendants satisfy the definitions of "debt collector" and "third-party debt collector" under TDCA, and that the Account at is consumer debt (Dkt. #1 ¶¶ 6–25).

### 1.     OWA's Liability Under the Texas Debt Collection Act

Griffin has adequately alleged that OWA committed wrongful acts in violation of the OWA and that she was injured as a result. As to the "wrongful acts" elements, Griffin contends that OWA violated the TDCA by making false statements to Griffin that she would be sued if she did not immediately repay the Account when, in fact, OWA had no intention of suing Griffin to collect on the Account (Dkt. #1 ¶ 36). Griffin further alleges that OWA failed to inform her that it was a debt collector attempting to collect a debt (Dkt. #1 ¶ 40). And finally, Griffin alleges that OWA wrongfully attempted to collect on a consumer debt in the state of Texas without first obtaining a surety bond and filing a copy of that bond with the Texas Secretary of State (Dkt. #1 ¶ 49).

Taking Griffin's undisputed allegations as true, she has alleged that OWA violated § 392.101 of the TDCA by attempting to collect debts without a surety bond on file and that it violated § 392.304 by misrepresenting the status of Griffin's debt and by failing to disclose that it was attempting to collect a debt.  *See* TEX. FIN. CODE ANN. § 392.304(a).  Further, Griffin alleges that she suffered damages resulting from OWA's collection practices, as required by § 392.403(a) of the TDCA (Dkt. #1 ¶ 54).  The Court is therefore satisfied that Griffin has pleaded a sufficient basis for her TDCA claim against OWA.

### 2.    Johnson's Liability Under the Texas Debt Collection Act

Likewise, Griffin alleges that Johnson created, ratified, and participated in OWA's wrongful acts, causing Griffin damages as a result (Dkt. #1 ¶ 45; 54).  Thus, Griffin has successfully alleged a violation of the TDCA by Johnson under § 392.304 of the TDCA.  *See Bray*, 2010 WL 4053794, at *8 (finding that individual can be liable as a "third-party debt collector" under the TDCA").

In sum, Griffin has alleged sufficient facts to assert plausible claims for violations of the FDCPA and TDCA against both Defendants.  Thus, because a default judgment is procedurally warranted and there is a sufficient basis in the pleadings, Griffin is entitled to a default judgment on liability under the FDCPA and the TDCA.  The Court now turns to the issue of the relief, if any, that Griffin is entitled to.

### III.    Form of Relief

Having concluded a default judgment is appropriate, the Court must determine if Griffin's requested remedies are appropriate upon the entry of default judgment.  Griffin asks the Court to enter an order finding OWA liable under the FDCPA and TDCA and awarding $1,100.00 in statutory damages ($1,000 under the FDCPA and $100 under the TDCA) (Dkt. #12 ¶¶ 5–7).

14

Griffin seeks the same against Johnson and asks the Court to hold both Defendants jointly and severally liable for her attorneys' fees and costs in the amount of $11,366.40 with post-judgment interest (Dkt. #12 ¶¶ 9–14).[5]  In addition, Griffin asks that the Court enter an injunction against Defendants enjoining them from collecting or attempting to collect in Texas (Dkt. #12).

As a general rule, the Fifth Circuit has held that courts should refrain from awarding monetary damages resulting from a default judgment without first conducting a hearing.  *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).  That said, the Court may award damages without first conducting a hearing if the damages sought are readily determinable. *UnitedHealthcare Ins. Co. v. Holley*, 724 F. App'x 285, 289 (5th Cir. 2018); *Sanders v. Niagara Restitution Servs.*, Inc., No. 6:19-CV-00199, 2020 WL 10046088, at *5 (E.D. Tex. Feb. 6, 2020). Griffin seeks statutory damages that are readily calculable, and she has submitted detailed declarations and records in support of her motion for default judgment (Dkt. #12, Exhibit 2).  The Court thus concludes that a hearing is not necessary.  *See Sanders*, 2020 WL 10046088, at *5.

### A.      Monetary Damages

Griffin seeks statutory damages under both the FDCPA and the TDCA (Dkt. #12 ¶¶ 6–12).[6]  In considering Griffin's claim for statutory damages under the FDCPA, she need only establish that Defendants violated the FDCPA; she need not show actual reliance on a false representation.  *See, e.g.*, *Prophet v. Joan Myers, Myers & Assocs., P.C.*, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008).  Nor does Griffin need to show any actual damages to recover statutory damages

---

[5] The Court need not enter a specific order granting Griffin's request for post-judgment interest, as post-judgment interest is mandated by statute and awarded as a matter of course.  28 U.S.C. § 1961(a); *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) ("Post-judgment interest is awarded as a matter of course.").

[6] In her complaint, Griffin also seeks actual damages (Dkt. #1 ¶ 99).  But, her motion for default judgment requets only statutory damages and makes no mention of actual damages (Dkt. #12 ¶¶ 6–12).  Considering this omission, the Court declines to consider Griffin's request for actual damages.  *Batiste v. Hewitt Capital LLC*, No. 3:18-CV-02308, 2019 WL 1778569, at *4 (N.D. Tex. Apr. 23, 2019).

under the FDCPA.  *In re Eastman*, 419 B.R. 711, 733 (Bankr. W.D. Tex. 2009) ("With regard to the statutory damages, a plaintiff need not establish actual damages to recover under the FDCPA"). Indeed, the FDCPA is a strict liability statute that allows for the award of statutory damages in an amount not exceeding $1,000 upon a finding of violation.  15 U.S.C. § 1692(k)(a).  In determining the appropriate amount of damages, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  *Id.* § 1692k(b)(1).  Although Griffin has established that Defendants violated the FDCPA on at least one occasion, the "frequency and persistence" of Defendants' noncompliance is unclear.  *See id.*  Nonetheless, Griffin argues that the statutory maximum is required to encourage Defendants' future compliance with the FDCPA given OWA's purported history of violating the FDCPA (Dkt. #12, Exhibit 3 at pp. 15–16).  Considering Defendants' alleged history of non-compliance and the violations of the FDCPA sufficiently alleged by Griffin, the Court finds an award of $500 in statutory damages assessed against Defendant OWA and an award of $500 in statutory damages against Defendant Johnson to be appropriate under the circumstances.  *See Sanders*, 2020 WL 10046088, at *6 (awarding $250 in FDCPA in statutory damages when plaintiff was unable to provide the court with "allegations or evidence sufficient to determine the nature or frequency of any alleged violations"); *Cole v. Truelogic Fin. Corp.*, No. 1:07-CV-00388, 2009 WL 261428 at *2 (W.D.N.Y. Feb. 4, 2009) (awarding $500 in FDCPA statutory damages when defendant "intentionally" violated the FDCPA).

Griffin is also entitled to statutory damages on her TDCA claims (Dkt. #12 ¶¶ 7; 10).  The TDCA provides that "[a] person who successfully maintains an action under this section for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each

violation of this chapter." TEX. FIN. CODE ANN. § 392.403(e).  Griffin has sufficiently pleaded at least one violation of the TDCA by each Defendant.  *See supra* Section II.B.  As a result, the Court finds an award of $100 in statutory damages against Defendant OWA and an award of $100 in statutory damages against Defendant Johnson to be appropriate here.

### B.   Attorneys' Fees, and Costs

In addition to statutory damages, Griffin seeks to recover her attorneys' fees and costs (Dkt. #12 ¶ 12).  The FDCPA provides for both attorneys' fees and costs, stating that "in the case of any successful action to enforce the foregoing liability, [the defendant is liable for] the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).  Because Griffin has prosecuted a "successful action" under the FDCPA, she is entitled to recover her reasonable attorneys' fees and her costs.  The Court addresses the reasonable measure of both fees and costs below.

### 1.   Attorneys' Fees

In essence, the FDCPA is a "fee-shifting statute," and plaintiffs who succeed in bringing FDCPA claims are generally entitled to an award of reasonable attorneys' fees.  *Young v. Asset Acceptance, LLC*, No. 3:09-CV-02477, 2011 WL 618274, at *2 (N.D. Tex. Feb. 10, 2011) (citing 15 U.S.C. § 1692k(a)(3)).  This is true even when the plaintiff recovers only statutory—but not actual—damages.  *See, e.g*, *Serna v. L. Off. of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 159 (5th Cir. 2015) (per curiam).  Grifin has successfully brought FDCPA claims against both Defendants and established her entitlement to statutory damages, and, as a result, she is entitled to recover attorneys' fees.  *See id.*

In determining whether Griffin's requested attorneys' fees are reasonable, the Court applies a two-step process known as the "lodestar" method.  *Fessler v. Porcelana Corona De Mex., S.A.*

*DE C.V.*, 23 F.4th 408, 415 (5th Cir. 2022).  First, the Court calculates a lodestar by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for similar work.  *Id.*  Second, the Court may decrease or enhance the amount based on the relative weights of twelve so-called "*Johnson* factors."  *Id.* at 415–16 (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)).  The party seeking to recover its attorneys' fees bears the burden of establishing that the requested fees are reasonable.  *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).  "But once calculated, the party seeking modification of the lodestar under the *Johnson* factors bears the burden."  *Fessler*, 23 F.4th at 416.

Griffin seeks to recover $10,840 in attorneys' fees, which represents 27.1 hours of work performed by Griffin's counsel, Mr. Jeffrey D. Wood, at a rate of $400 an hour (Dkt. #12, Exhibit 2).  In support of this request, Griffin has submitted an affidavit from Mr. Wood, which details his qualifications and his experience handling FDCPA cases and attests that his hourly rate is reasonable (Dkt. #12, Exhibit 2 ¶¶ 4–9).  Mr. Wood also included billing records detailing the time that he spent on this case and the nature of the work performed (Dkt. #12, Exhibit 1).  Given the difficulties that Griffin encountered in identifying the correct defendants, and the time spent on attempted communications with Defendants, preparation of the entry of default, the motion for default judgment, and the supporting declarations, the Court does not find the amount of time spent on this case (27.1 hours) to be per se unreasonable.

Likewise, Griffin has carried her burden of establishing that Mr. Wood's requested hourly rate of $400/hour is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *McClain*, 649 F.3d at 381.  The reasonableness of Mr. Wood's requested hourly rate is detailed in the affidavit supporting Griffin's request for attorneys' fees (Dkt. #12, Exhibit 2 ¶¶ 4–9).  Parties typically establish the reasonable

hourly rate by providing affidavits of other attorneys practicing in the community in which the district court sits.  *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (noting that "the relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits").  That said, "[t]he affidavits of counsel may alone be sufficient proof" to establish the reasonable hourly rate.  *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 491 (5th Cir. 2012).  The trial court itself is also considered an expert as to the reasonableness of attorneys' fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorneys' fees.  *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978)).  In determining reasonable rates, a court considers the attorneys' regular rates as well as prevailing rates in the relevant legal community.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).  The Court is satisfied that Mr. Wood's rates are consistent with the prevailing market rate for both the Sherman and the Dallas-Fort Worth legal communities.[7]

Multiplying the 27.1 hours that Mr. Wood worked on this case by his reasonable hourly rate of $400 yields a base lodestar amount of $10,480.  Applying the *Johnson* factors, the Court determines that no upward or downward adjustment is necessary.  Griffin is therefore entitled to recover $10,840 in attorneys' fees.

---

[7] The Sherman Division covers some parts of the city of Dallas. For example, a small portion of Dallas is included in Collin County, a county in the Sherman Division. *See* https://www.collincountytx.gov/living/Documents/CollinArea .pdf (last visited June 29, 2023).  Further, the Office of Personnel Management designates the Sherman Division (located in Grayson County) to be in the Dallas-Fort Worth locality pay area.  Thus, the Sherman Division's pay scale for court employees is based on the Dallas-Fort Worth area. *See* OPM, *Policy, Data, Oversight*, https: //www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2021/locality-pay-area-definitions/#TX-OK     (last visited June 29, 2023).  Accordingly, this Court has previously found that the Dallas-Fort Worth legal market can be an appropriate guide for determining the reasonableness of rates. *See Solferini v. Corradi USA, Inc.*, No. 4:18-CV-00293, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (collecting cases).

### 2.      Costs

As noted above, the FDCPA also allows a successful party to recover the "costs of the action."  15 U.S.C. § 1692k(a)(3).  Griffin seeks to recover $526.40 in costs here—$402 for the filing fee in this case and $124.40 for private service of process (Dkt. #12, Exhibit 1 at p. 4).  The costs available to a prevailing party are generally set out in 28 U.S.C. § 1920, which allows for the following categories of taxable costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  A district court may decline to award costs set forth in § 1920 but may not award costs omitted from the statute.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987).  Thus, Griffin may recover her filing fees, as "fees of the clerk" are recoverable under § 1920.  But § 1920 says nothing about fees for private service of process, and the Fifth Circuit has held that "costs for private process servers are not recoverable, absent exceptional circumstances."  *Zastrow v. Hous. Auto M. Imports Greenway, Ltd.*, 695 F. App'x 774, 780 (5th

Cir. 2017).  Griffin has shown no exceptional circumstances here.  The Court therefore finds that Griffin is entitled to recover only $402 in costs.[8]

### C.      Injunctive Relief

As to Griffin's request for a permanent injunction, courts have acknowledged that default against a defendant is tantamount to the finding of actual success on the merits typically required to support a permanent injunction. *See, e.g., Twist & Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 785 (E.D. Tex. 2006).  Under the TDCA, an individual who establishes a violation of the statute's bond requirement may sue for an injunction to "prevent or restrain" future violations. TEX. FIN. CODE ANN. § 392.403(a).  And as the Supreme Court of Texas has previously held, when an injunction is authorized by statute, the district court is authorized to issue an injunction based exclusively on a determination that the statute has been violated. *See, e.g.*, *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002); *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 805 (Tex. 1979) (upholding a statutorily authorized injunction issued by a district court after finding the defendant violated § 4.02(a) of the Texas Clean Air Act).

The Court is satisfied that a permanent injunction against Defendants is warranted.  Griffin has established that both OWA and Johnson have violated the TDCA.  Accordingly, the framework of the TDCA provides the Court with the authority to issue an injunction, and the Court will exercise that authority here.  That said, the Court is mindful that its injunction is based solely on a default judgment.  For this reason, the Court will limit its injunction to Defendants' conduct as it pertains to Griffin. *Sanders*, 2020 WL 10046088, at *7 (limiting injunction to violations of the

---

[8] Griffin asks the Court to hold Defendants jointly and severally liable for attorneys' fees and costs (Dkt. #12 ¶ 12). Joint and several liability is a theory of recovery that may apply to attorneys' fees and costs in a multi-defendant case when there is a "single indivisible injury" and each party played a significant role in the litigation. *See Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 772–73 (5th Cir. 1996). Courts in the Fifth Circuit routinely find defendants jointly and severally liable for attorneys' fees and costs in the context of FDCPA cases. *Vasquez*, 2020 WL 13413996, at *9; *Reyelts v. Cross*, 968 F. Supp. 2d 835, 851 (N.D. Tex. 2013), *aff'd*, 566 F. App'x 316 (5th Cir. 2014). The Court will follow suit here and hold Defendants jointly and severally liable for Griffin's attorneys' fees and costs.

TDCA pertaining to the plaintiff when injunction was based on default judgment).  Defendants are thus enjoined from future violations of the TDCA as described herein relating to Plaintiff Tasha Griffin.  *See Marauder Corp. v. Beall*, 301 S.W.3d 817, 821 (Tex. App.—Dallas 2009, no pet.).

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Tasha Griffin's Motion for Default Judgment (Dkt. #12) against Defendants O'Brien, Wexler, and Associates, LLC and Charles Johnson is hereby **GRANTED in part**.

It is further **ORDERED** that Plaintiff Tasha Griffin is awarded $600 in statutory damages against Defendant O'Brien, Wexler, and Associates, LLC, which represents $500 in statutory damages under 15 U.S.C. § 1692(k)(a) and $100 in statutory damages under TEX. FIN. CODE ANN. § 392.403(e).

It is further **ORDERED** that Plaintiff Tasha Griffin is awarded $600 in statutory damages against Defendant Charles Johnson, which represents $500 in statutory damages under 15 U.S.C. § 1692(k)(a) and $100 in statutory damages under TEX. FIN. CODE ANN. § 392.403(e).

It is further **ORDERED** that Plaintiff Tasha Griffin is awarded attorneys' fees in the amount of $10,480 and costs in the amount of $402 against Defendants O'Brien, Wexler, and Associates, LLC, and Charles Johnson, jointly and severally.

It is further **ORDERED** that Defendants O'Brien, Wexler, and Associates, LLC and Charles Johnson are hereby enjoined from future violations of the TDCA as described herein relating to Plaintiff Tasha Griffin.

All relief not previously granted is hereby **DENIED**.

The Court will render a Final Judgment consistent with this Memorandum Opinion and Order separately.

**IT IS SO ORDERED.**

**SIGNED this 30th day of June, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE